| | |
|---|---|
| **SHEARMAN & STERLING LLP**<br>James L. Garrity Jr. (JG 8389)<br>Kenneth S. Prince (KP 6719)<br>David M. Sollors (DS 7328)<br>599 Lexington Avenue<br>New York, NY 10022<br>(212) 848-4000 (phone)<br>(646) 848-4000 (fax) | **LAMBDA LEGAL DEFENSE AND EDUCATION FUND, INC.**<br>David S. Buckel (DB 2346)<br>120 Wall Street, Suite 1500<br>New York, NY 10005<br>(212) 809-8585 (phone)<br>(212) 809-0055 (fax) |

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

ADOLA M. DEWOLF and LAURA A. WATTS,

　　　　　　　　　Plaintiffs,

vs.

COUNTRYWIDE FINANCIAL CORPORATION,

COUNTRYWIDE HOME LOANS, INC.
d/b/a AMERICA'S WHOLESALE LENDER,

COUNTRYWIDE HOME LOANS, INC. LP, and

COUNTRYWIDE HOME LOANS SERVICING LP,

　　　　　　　　　Defendants.

No. _____

**JURY TRIAL DEMANDED**

MAY 24 2007

## COMPLAINT

Plaintiffs Adola M. DeWolf and Laura A. Watts (collectively, "Plaintiffs"), by their undersigned attorneys, bring this action and allege as follows:

### INTRODUCTION

In this action, Plaintiffs, a loving, committed, same-sex couple sharing their lives together and who wished to share the burdens and rewards of joint home and property ownership, seek

damages and injunctive relief against Defendants Countrywide Financial Corporation ("CFC") and its affiliates Countrywide Home Loans, Inc. d/b/a America's Wholesale Lender ("CHLI"), Countrywide Home Loans, Inc. LP ("CHLP") and Countrywide Home Loans Servicing LP ("CHLS") (each a "Defendant" and collectively "Defendants" or "Countrywide"), formerly the lender and servicer under a Note (as defined below) secured by a Mortgage (as defined below) on Plaintiffs' sole home and residence located in Conesus, New York (the "Property").

When the Plaintiff couple sought to add one of them as a party responsible for monthly payments under the mortgage loan on their home, Countrywide called due the entire unpaid balance of the loan and threatened foreclosure, forcing the couple to scramble to refinance at a higher interest rate. In so acting, Countrywide unlawfully discriminated against Plaintiffs on the basis of their marital status. Furthermore, Countrywide repeatedly misrepresented the terms of the Mortgage and Note and acted with complete disregard to Plaintiffs' rights in violation of the express terms of the Mortgage and Note. On the basis of the acts described herein, Plaintiffs state claims for Countrywide's violation of federal lending laws, deceptive practices, breach of contract and negligent misrepresentation.

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over Plaintiffs' federal claims pursuant to the Equal Credit Opportunity Act, 15 U.S.C. §§ 1691, *et seq.* and 28 U.S.C. § 1331.

2. This Court has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a).

3. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendants have places of business in this District and because Defendant CHLI is a New York corporation.

## PARTIES

### *Plaintiffs*

4. Plaintiff Adola M. DeWolf ("DeWolf"), of Conesus, New York, is the life partner of Plaintiff Watts and was, at all relevant times, an owner in fee simple of the Property.

5. Plaintiff Laura A. Watts ("Watts"), of Conesus, New York, is the life partner of DeWolf. Watts became a joint tenant owner in fee simple of the Property and sought to be added as an obligor on the Note and a mortgagor under the Mortgage.

6. Plaintiffs are an unmarried same-sex couple, who have been in a loving, committed, same-sex domestic partner relationship since June 2004.

7. Plaintiffs are both gainfully employed and creditworthy, and were so for all times relevant to this action.

8. Plaintiffs are "applicants" within the meaning of the Equal Credit Opportunity Act, 15 U.S.C. § 1691a and ECOA Regulations, 12 C.F.R. § 202.2(e).

### *Defendants*

9. Upon information and belief, Defendant CFC is a corporation organized and existing under the laws of the State of Delaware.

10. Upon information and belief, Defendant CFC has its principal executive office at 4500 Park Grenada, Calabasas, CA 91302.

11. Upon information and belief, Defendant CHLI is a corporation organized and existing under the laws of the State of New York.

12. Upon information and belief, CHLI is an affiliate of CFC.

13. Upon information and belief, Defendant CHLI has its principal executive office at 400 Countrywide Way, Simi Valley, CA 93065.

14. Upon information and belief, Defendant CHLP is an affiliate of Defendant CFC.

15. Upon information and belief, Defendant CHLS is a limited partnership organized and existing under the laws of the State of Delaware.

16. Upon information and belief, Defendant CHLS is an affiliate of Defendant CFC.

17. Upon information and belief, Defendant CHLS has its principal executive office at 4500 Park Grenada, Calabasas, CA 91302.

18. Upon information and belief, Defendant CHLS is a limited partnership organized and existing under the laws of the State of Texas.

19. Upon information and belief, Defendant CHLS has its principal executive office at 7105 Corporate Drive, Plano, TX 75024.

20. At all times relevant to this action, Defendants operated and did business in this District.

21. Each Defendant is a "creditor" within the meaning of the Equal Credit Opportunity Act, 15 U.S.C. § 1691a.

## FACTS

22. At the relevant times, the Property was secured by mortgage loan number 006388783, dated August 27, 2004 between DeWolf and KeyBank National Association (the "Mortgage"), as amended by an Adjustable Rate Rider also dated August 27, 2004 between DeWolf and KeyBank National Association (the "Rider"). The Mortgage was granted by DeWolf to secure an adjustable rate note with KeyBank National Association, also dated August 27, 2004 (the "Note").

23. On information and belief, in or around July 2005, KeyBank National Association assigned all its right, title and interest under the Mortgage, Rider and Note, and Defendants became the successor in interest to the lender's rights and obligations under the Mortgage and Note.

24. Plaintiff Adola DeWolf is in a loving, committed relationship with her partner, Laura Watts. DeWolf and Watts first met around June 2004, began dating, and quickly fell in love. Shortly thereafter, DeWolf purchased the Property as her sole home and residence and entered into the Mortgage and Note.

25. In or around July 2005, DeWolf and Watts decided to share their lives and create a home together. Plaintiff Watts moved in with DeWolf and sold her own home, leaving the Property as the sole residence of both Plaintiffs.

26. More than merely living together in the same house, however, Plaintiffs decided that they ought to share equally in the financial obligations and benefits of home ownership. Plaintiffs were also concerned that, in the event of DeWolf's illness or death, Watts could find herself out of a home. Accordingly, Plaintiffs sought joint ownership of the Property and joint responsibility under the Mortgage and Note, so that either partner's interest would be protected in the event something should happen to the other.

27. Plaintiffs were initially unsure about how they could make their goal of joint home ownership a reality. Accordingly, in or around July 2005, Plaintiffs telephoned Countrywide and requested guidance on exactly how to proceed. During that call, Plaintiffs spoke with a representative of Countrywide and specified that Plaintiffs were unmarried, same-sex domestic partners who wished to become joint owners of the Property with joint obligations under the Mortgage and Note.

28. In response to their request, Countrywide's representative replied that she would send written instructions explaining the steps Plaintiffs would need to take to add Watts as a co-owner and additional obligor under the Note and Mortgage.

29. On or about July 27, 2005, Plaintiffs received a letter from Defendant CHLI providing detailed instructions for Plaintiffs to follow in order for Defendants to process the request to add Watts to the Mortgage and Note. The letter outlined eight specific steps Plaintiffs would need to take. The letter also requested additional information and documentary material from Plaintiffs that, according to the letter, Defendants required to process the request. Included in the list of necessary documents were a "copy of the recorded Deed transferring title" and a "signed letter explaining the relationship between the parties."

30. In providing these instructions via telephone and in writing, at no time did Countrywide give any indication that there was any restriction on transferring an interest in the Property to a same-sex domestic partner under the Mortgage, or that if Plaintiffs followed Countrywide's explicit instructions, there would be a breach of any provision of the Mortgage or Note.

31. DeWolf and Watts followed Countrywide's directions exactly. On or about November 10, 2005, DeWolf executed a quitclaim deed transferring the title in the Property to herself and Watts as joint tenants with the right of survivorship. The deed was duly recorded by the Livingston County Clerk.

32. On or about December 9, 2005, Plaintiffs submitted to Countrywide a copy of the recorded deed transferring title and all other listed items requested by Countrywide in the letter dated July 27, 2005, including a letter explaining that Watts and DeWolf were in an "exclusive mutual commitment, similar to that of a marriage," and, as such, were financially interdependent domestic partners.

33. On or about April 6, 2006, Plaintiffs received a notice (the "April 6 Notice"), informing them that Countrywide "had decided to exercise its option under paragraph 18 of the

Mortgage to declare all sums due and payable," and that full payment of all amounts due under the Note was required by May 8, 2006. The April 6 Notice included a copy of the August 27, 2004 mortgage instrument, with a circle drawn around paragraph 18, which states that: "Lender may require immediate payment in Full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission." The April 6 Notice also threatened foreclosure proceedings against the Plaintiffs in the event they did not comply with Countrywide's demands.

34. The April 6 Notice neither included nor referred to the Rider. Section C1 of the Rider amended and superseded paragraph 18 of the Mortgage, providing that Defendants were not to accelerate the loan if the borrower caused to be submitted certain information about an intended transferee of an interest in the Property, and if Defendants reasonably determined that adding the transferee to the title, Mortgage and Note would not impair Defendants' security. Remarkably, Defendants failed to refer to or include reference to the Rider in any of their correspondence with Plaintiffs.

35. Plaintiffs were shocked and disturbed to learn that their home and financial security were at risk simply because they were an unmarried same-sex couple seeking the benefits of joint home ownership. Plaintiffs were particularly upset and concerned that Defendants had decided to accelerate and call due all sums payable under the Note when all Plaintiffs had done was to follow Countrywide's specific written instructions on how to become co-owners and joint mortgagors of the Property.

36. After receiving the April 6 Notice, DeWolf twice telephoned Defendants and stated that she had done nothing wrong, but had merely followed the explicit instructions given to her by the company. On both occasions, the Countrywide representative stated that Countrywide

does not recognize domestic partnerships and that DeWolf had to pay the amounts owing under the Note in full by May 8, refinance the Mortgage and Note, or remove Watts from the title.

37. Had Plaintiffs been married, Countrywide would not have declared all sums due and payable.

38. In this predicament, Plaintiffs felt they had no choice but to refinance with another lender. Plaintiffs were then put in the difficult position of trying to refinance their home loan quickly, forcing them to locate and engage another lender on suboptimal terms. After a traumatic few weeks, Plaintiffs were able to obtain a new mortgage from another lender, albeit at a higher interest rate. Countrywide's conduct caused Plaintiffs great distress, particularly because of the knowledge that Countrywide would not have acted in such a way toward Plaintiffs if Plaintiffs were a married couple rather than an unmarried, same-sex couple in a committed relationship.

39. Plaintiffs were not only embarrassed and greatly inconvenienced by Defendants' discriminatory actions, but were directly injured as a result. Defendants' discriminatory conduct caused Plaintiffs to suffer economic injury in the form of (1) a higher interest rate being applied under the refinanced loan; and (2) substantial out-of-pocket expenses to refinance the loan on short notice. Plaintiffs also suffered emotional distress and humiliation as a result of Defendants' unlawful acts.

## CAUSES OF ACTION

### COUNT I
**Damages and Injunctive Relief under the Equal Credit Opportunity Act**

40. Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

41. At all times relevant to this action, Plaintiffs were "applicants" within the meaning of the Equal Credit Opportunity Act, 15 U.S.C. § 1691a.

42. At all times relevant to this action, each Defendant was and continues to be a "creditor" within the meaning of the Equal Credit Opportunity Act, 15 U.S.C. § 1691a.

43. Defendants' refusal to add Plaintiff Watts to the Note and Mortgage, and acceleration of the Note and Mortgage, unlawfully discriminated against Plaintiffs on the basis of their marital status, in violation of 15 U.S.C. § 1691(a) and 12 C.F.R. § 202.6(b)(8).

44. Defendants' actions and policy of treating married couples differently than unmarried couples constitutes an ongoing violation of 15 U.S.C. § 1691(a) and 12 C.F.R. § 202.6(b)(8).

45. Because of Defendants' Equal Credit Opportunity Act violations, Plaintiffs are entitled to recover damages and reasonable attorneys' fees and costs of the action from Defendants, pursuant to the Equal Credit Opportunity Act, specifically 15 U.S.C. § 1691e.

46. Because Defendants' unlawful policy of discrimination is an ongoing violation of 15 U.S.C. § 1691(a), Plaintiffs are also entitled to a permanent injunction of said policy pursuant to 15 U.S.C. § 1691e (c).

## COUNT II
### Damages under the New York Deceptive Practices Act

47. Plaintiffs reallege and incorporate by reference all allegations in paragraphs 1-39.

48. Defendants mischaracterized the terms of the Mortgage to Plaintiffs in a manner that was deceptive and misleading in material respects, in violation of the New York Deceptive Practices Act, N.Y. Gen. Bus. Law § 349.

49. Specifically, Defendants misleadingly instructed DeWolf as to how to add Watts as an additional obligor under the Mortgage, without indicating that Defendants would treat such action as triggering acceleration of all sums secured by the Mortgage.

50. Defendants also misrepresented the terms of the Mortgage, by omitting any reference to the Rider in communications with the Plaintiff.

51. Plaintiffs were injured by these deceptive and misleading acts.

52. Because of Defendants' New York Deceptive Practices Act violations, Plaintiffs are entitled to recover damages from Defendants pursuant thereto.

## COUNT III
### Breach of Contract

53. Plaintiffs reallege and incorporate by reference all allegations in paragraphs 1-39.

54. At all relevant times, Plaintiffs had a valid contract.

55. Defendants' acceleration of all payments due under the Note, in violation of the terms of the Mortgage and Note, constituted a breach of contract.

56. Because of Defendants' breach of contract, Plaintiffs are entitled to recover damages from Defendants.

## COUNT IV
### Negligent Misrepresentation

57. Plaintiffs reallege and incorporate by reference all allegations in paragraphs 1-39.

58. Defendants owed Plaintiffs a duty to provide them with correct information.

59. Defendants represented the terms of the Mortgage in a manner that was false and that Defendants and their representatives knew or should have known was false, both when Defendants instructed Plaintiffs to partially transfer the Deed from DeWolf to Watts and when Defendants omitted all reference to the Rider in their communications with Plaintiffs.

60. Defendants knew that Plaintiffs had requested the information for a serious purpose.

-10-

61. Defendants knew that Plaintiffs intended to rely on the information.

62. Plaintiffs reasonably and detrimentally relied on the information provided to them by Defendants.

63. Because of Defendants' negligent misrepresentation of the terms of the Mortgage, Plaintiffs are entitled to recover damages from Defendants.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray for judgment against Defendants as follows:

(a)   Awarding Plaintiffs injunctive relief;

(b)   Awarding Plaintiffs compensatory damages, including, but not limited to, damages for refinancing costs and additional mortgage interest, in an amount to be determined at trial;

(c)   Awarding Plaintiffs punitive damages under the Equal Credit Opportunity Act, 15 U.S.C. § 1691(e);

(d)   Awarding Plaintiffs their reasonable attorneys' fees, together with the costs and disbursements of this action; and

(e)   Such other and further relief as the Court deems just and proper.

Dated:    New York, New York
          May 24, 2007

                          SHEARMAN & STERLING LLP

                          */s/ James L. Garrity Jr.*

                          James L. Garrity Jr. (JG8389)
                          Kenneth S. Prince (KP 6719)
                          David M. Sollors (DS 7328)
                          Shearman & Sterling LLP
                          599 Lexington Avenue
                          New York, NY 10022
                          (212) 848-4000 (phone)
                          (646) 848-4000 (fax)

                          and

                          LAMBDA LEGAL DEFENSE AND EDUCATION FUND, INC.

                          */s/ David S. Buckel*

                          David S. Buckel (DB 2346)
                          Lambda Legal Defense and Education Fund, Inc.
                          120 Wall Street, Suite 1500
                          New York, NY 10005
                          (212) 809-8585 (phone)
                          (212) 809-0055 (fax)

                          *Attorneys for Plaintiffs*